Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Good morning. Would you like some rebuttal time? No, no. We'll give you a minute anyway. Okay, thanks. This case is about a Colombian police officer who is 31 years old who came to this country in 2001 and applied for asylum based on that he was threatened by the revolution army. His parents got direct threats, is that correct? Yes, yes. Is his parents still in Colombia? Yes, his parents are still in Colombia and one of IG's findings is because his parents, after relocating to another city, they are safe. Apparently they are not harmed. So based on that, he should not have any reason to relocate. They're saying he could relocate. There was no evidence that he could not relocate to another city. Exactly. So they are not challenging his testimony saying that he's not threatened, but they say even though he's threatened, he can relocate to a safe location. So based on that, his application should be denied. But on the case now, made by this court in Wendt, W-E-N-D-T-E, the court said even though there's possibility of relocation, but it's to a safety place, the IG should not, based on this finding, deny asylum. But there's a different set of facts in this case here. This case here is that the parents got the threat. Parents are still there. Parents are apparently not in harm's way. This person has left the police force. If he were to go back and be near the parents, it seems like there's no reason that he would not be treated any differently than the parents. That's just the basic logical analogy that's being made. Here. But they did not draw the analogy here. Actually, what happened is he testified he continued to receive threat even after his parents' relocation. And he is the police officer who served in the police force, not his parents. Certainly he's a bigger target in this case, much bigger than his parents. When did he leave the police force? He left the police force in 2000. Immediately after he left the police force, he fled to the U.S. And he also produced five letters from his colleagues in the police force saying that he was declared a military target by the FARC. Also, he produced many evidence, including news articles saying that family members of the police force were killed and often threatened by the FARC because the Colombian government was not able to exercise control or confront the FARC. The Colombian government wasn't acquiescing in that. It's just that the FARC controlled primarily rural areas. Is that correct? It's an ongoing conflict. The FARC and the government are facing off in many areas. Sometimes they control more areas than rural areas. Sometimes they control less areas. But my client initially was residing near the rural area, which the FARC had very strong control at that time. But the parents now live in an urban area. If he were to go back, would he go to an urban area near his parents? He may, yes. But it does not mean that he would go back to an urban area where he is safe. Isn't he safer in an urban area than in a rural area controlled by the FARC? I would admit that, yes. Well, that seems to be in part the IJ's and in turn the BIA's point of decision, right? That if he can be reasonably safe, then he doesn't have a reasonable fear and therefore asylum is improper. How do you address that? I respectfully disagree because the law says even if the possibility of persecution is only 10%, he should still be eligible for asylum. So the IJ has no finding from the government side or evidence from the government side that if he relocates to an urban area, he is 100% safe. He is not facing persecution. He still has a reasonable fear of persecution, even though the percentage may be lower. But it doesn't mean that he will not face any threat and he will be 100% safe. How significant is it that the threats came through his parents and weren't made to him directly? Threats were also made to him directly. Threats were made to his parents and were also made to him directly. Where is there evidence in the record of that? According to the documents submitted by his colleague, he was declared a military target by FARC. That wouldn't be necessarily a threat made to him directly. It would be indirectly that somehow somebody told him, told them, that he was a target at one point in time. Yes, that's accurate, yes. Anything else? Any other questions? Good, thank you very much. We'll have you back at the rebuttal. Ms. Friedman? Good morning, my name is Nancy Friedman for the respondent. I would like to start out by just briefly referring to a couple of key pages in the record of petitioner's testimony. I'm looking at page 89 of the administrative record where the petitioner was asked about his affidavit saying they never made any threats to you directly. According to your affidavit, you were never threatened yourself or never harmed yourself. And petitioner responds, yes. The question goes on, essentially threats occur to your parents and you move them to the city where they are safe. Yes, and in fact you said essentially in your affidavit that you yourself were safe because you were a police officer in the city. Yes, so I believe the transcript states otherwise than petitioner said earlier today that petitioner was not directly threatened. That police officer point, it doesn't look like the government is making the argument to us that Mr. Tamayo's status as a former police officer precludes a finding that, or his status as a police officer precludes a finding that he suffered persecution or doesn't. What's your position on that? Our position is that it doesn't preclude or include a finding that he was persecuted on account of that status. But if you look at the board decision in matter of Fuentes, they said that the status alone as a police officer or former police officer that had been threatened is insufficient. Insufficient, but it doesn't stand as a bar, right? It doesn't stand as a bar if there are other things that add to the scenario that happened. In this case, it just didn't. This case is much more similar and should be controlled by this court's decision in Lee L.I., where it's unfulfilled threats alone. And petitioner isn't claiming anywhere that he was persecuted on any basis other than the fact that he was trying to do his job ethically and correctly as a police officer. Now, if I read Fuentes correctly, it does say that if you're a former member of national police, that's an immutable characteristic, obviously. It's a historical fact. Then that could be the basis for that. It says, in fact, quote, past association may be able to demonstrate a well-founded fear of persecution on account of a ground protected by that. Namely, I have that status as a former police officer. I think I've quoted that accurately. If that's an accurate statement and he says, and he's got a lot of people saying it on his behalf, too, threats were made directed at him, if not indirectly directed in his direction, why isn't that enough? He's got a status that the law apparently recognizes. He's got threats being made. FARC has got a reputation, well-earned apparently, for knowing how to kidnap and kill people. Why wouldn't a reasonable person under those circumstances be concerned and have a fear? Well, it's a couple of reasons. First of all, he's not claiming here that any threats were on account of a protected ground. He's just saying it was because as a police officer I was doing my job. He's not claiming that as a police officer. That's what Fuentes says, I think. That's what I just tried to quote to you. From Fuentes, page 661, the board seems to be recognizing that that's a status that, quote, could be found to be persecution on account of political opinion or membership in a particular social group, unquote. So you're a former cop. That's a social group that evidently the board thought was recognizable as such, and you're being threatened because of that. Have I got Fuentes wrong? Well, I think that what Fuentes was getting at was, as you just stated, that that alone is not enough. And in this case, there wasn't enough else that happened to amount to the level of persecution. The threats weren't enough is what you're saying. That's right. The threats were not enough. And this court has said that many times. They're unfulfilled threats alone. The threats have to be imminent and menacing and so forth to rise to the level. In fact, I'd like to go back to exactly what happened in this case that I think makes it clear that the threats to his parents alone don't amount to persecution. First of all, referring to the declarations that the petitioner referred to from his colleagues, what those declarations say are that the threats were because he lived in an area where the FARC was in control. That's what all the declarations from his colleagues say. And that's something I don't think was clear from either of the briefs. But, you know, if you look back specifically at the language in the declaration, it says, Petitioner and his family lived in an area that was controlled by FARC, and there was danger from that. And that is in accord with what happened here, is that he moved his parents. Petitioner himself states they lived safely. And it's also interesting to note in this record what happened is that... Did he actually move to the city or did he relocate his parents? I believe he just relocated his parents. Petitioner came to the United States on a trip earlier before his final entry to the U.S. He moved his parents in July 1998. He came to visit the United States in June 2000, stayed for two or three months. And then the reason he returned to Columbia, he says, was so he could finalize his resignation from the police force, that that process took time. But he didn't move, he moved his parents, right? Yes. So when the I.J. says, as the I.J. does say on page 44 of the record, that the, quote, respondent acknowledged he was no longer targeted by FARC when he moved to the city, unquote, that's just an erroneous factual statement by the I.J., right? I don't know, Your Honor. I don't know that there was testimony or evidence in the record one way or the other that Petitioner himself moved. I'm not sure where he lived during his last year or so in Columbia. I could have been wrong, but I was under the same impression that you evidently have been, which is he moved his parents, but he didn't move himself. So when the I.J. starts talking about he was safe when he moved, it appears to be a misunderstanding or an inaccurate perception. That may be. I think what the I.J. meant to say was that... He would be safe if he did move. Yes, that he would be safe if he did move and that his parents, the ones who had gotten the threatening phone calls, were safe. Like I say, I'm not sure the record was clear one way or the other as to where he actually lived. But going back to really the underlying basis of this is if you look at what he himself says, why was he threatened or why were his parents threatened? It's because the FARC members that were in prison wanted to escape. They wanted to bribe him to let him out, and he said no. So that's the underlying motivation. And he was no longer a police officer. Therefore, it just doesn't follow logically that there would be any reason for him to have a fear any longer. You don't think it would be reasonable for somebody who's been threatened with death or kidnapping to think that maybe people who do that sort of thing know how to bear grudge? I think it's possible they do, but there's just no evidence in this record that FARC is motivated to seek him out. The record is clear that he remained living in Colombia for quite some time after these initial threats without harm while he was an officer. That strikes me as relevant. But on your point, what would be an adequate evidentiary record? Would an applicant petitioner have to come forward with evidence from FARC itself? How would you prove that you were still at risk, even though you changed your status, other than to say it's a logical conclusion that bad actors can maintain a bad motive even when you've left the police force? Well, I think the answer to that is that there needs to be some objective evidence in the record and that there isn't any. Isn't there a statement from his parents that they sought them out after they moved and after he was trying to get himself out of the force and reiterated the threat? Are you referring, Your Honor, to some specific statement by his parents or his own declaration in support of his asylum application? I'm saying that my recollection of the record, and I'll have to see if I can find where it is, is that after he moved them, the FARC found the parents and reiterated the threat. That's what his own declaration says in support of his asylum application. Petitioner's brief to this court on page 15, I believe, states otherwise. Petitioner's brief to this court says, After Petitioner helped his parents move into the city, they were not threatened again. Well, the parents weren't, but the assertion is that he was threatened again through the parents. They found the parents after they'd moved, reiterated the threat, directed at the son, Petitioner here. And I'm trying to find out if what the position the government has taken is that's not, you said there's no evidence of a continuing threat. Is that not evidence of a continuing threat? It was an unfulfilled threat without more here. And the government's position is that this case falls under Lee. What is an unfulfilled threat? Well, no harm of any sort or nothing else happened. Well, that doesn't work. It can't be that you have to be shot in order to have a fulfilled threat. Well, I agree with that. But if we compare this case, for example, to Venti that the court referred to a little bit earlier, it was a highly different situation where the petitioner in that case, I believe, had been shot from a source that he wasn't sure where exactly it came from. He had gone to authorities repeatedly seeking protection. I agree that Venti is a very different circumstance. But it's Venti. Look, there are some similarities here, too. In Venti it talks about his name being on a list of people identified by paramilitary organizations having collaborated in other threats specifically directed against Venti, states he should not have returned home, focused on those. So Venti seemed to be saying, or at least those facts, if you're identified with a group that the threatening group doesn't like and you have threats directed at your family, through your family, at you, that that can be a real problem. I think the key is what you just said, can be. But on the record in this case, it's not reasonable to conclude that. In this case, clearly the board's decision was supported by substantial evidence and should be affirmed. If there are no other questions, I will sum up then by just stating that. Any other questions? Thank you, Ms. Friedman. Thank you. Mr. Schrute, anything you want to add? Okay. We thank counsel for a helpful argument. We will take the matter under advisement. Thank you.